Ryan *et al.* v. Ray *et al.*

Filed Jan. 19, 1886.

---

No. 10,801.

## RYAN ET AL. *v.* RAY ET AL.

SAVINGS BANK.—*Action to Wind up Affairs of Must be Brought by State Au-
ditor.*—Under section 2757, R. S. 1881, the auditor of state is the only.
person authorized to maintain an action against the officers and trustees
of savings banks for a violation of their statutory duties.

SAME.—*Creditors Must Look to Auditor's Proceeding.*—Where the auditor of
state has brought an action to wind up the affairs of a savings bank,
all persons whose rights are involved must look to that officer and that
proceeding for their enforcement. They can not maintain an inde-
pendent action for that purpose.

From the Marion Superior Court.

*A. C. Harris, W. H. Calkins, C. F. Rooker* and *A. W.
Hatch,* for appellants.

*T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks,
R. B. Duncan, C. W. Smith, J. S. Duncan* and *J. R. Wilson,*
for appellees.

MITCHELL, J.—This action was brought by Mattie J. Ryan, Emma Keller and Margaret Thornton, who aver in their complaint that they sue for themselves and two thousand other depositors in the Indianapolis Savings Bank.

The suit is against the officers and trustees of the savings bank. The auditor of state and the bank are also named as defendants in the complaint. The action is to charge the officers and trustees, and make them personally liable for alleged misconduct and violation of duty in the conduct of the bank.

It is averred that the bank was organized and opened for business about the 28th day of September, 1871, and that it continued to do business until the 20th day of December, 1878. That at the last mentioned date it was found to be insolvent, and that the auditor of state instituted proceedings in the Marion Superior Court to wind up its affairs. That a receiver was appointed who was administering its assets when this action was commenced.

It is averred that the officers and trustees had, in various ways, neglected their duty, and mismanaged the business of the bank.

Numerous specifications of misconduct, deception and negligence are set out in the complaint, and it is averred that by means of the several acts specified the assets of the bank were wasted and diminished in a large amount, to the damage of depositors, and of the plaintiffs particularly.

It is alleged that the defendants were the officers in control of the bank, and that they would not permit the action against themselves to be brought by and in the name of the bank; that the action which was brought by the auditor of state was brought at the request of the officers and trustees of the bank, the complaint in that case alleging the insolvency of the bank, but charging no fraud or neglect on the part of the trustees, nor any loss, arising out of any dereliction of duty or violation of trust on the part of any of the officers or trustees of the bank, and claiming no damages

against any of the trustees for dereliction of duty or violation of trust; that the complaint in that action prayed for the appointment of a receiver, and that the assets might be converted into cash, and that the bank might be wound up; that the trustees themselves appeared to the action on the same day the complaint was filed, confessed the insolvency of the bank, and consented to the appointment of a receiver, and that thereupon the defendant, John W. Ray, the former secretary and treasurer of the bank, was appointed receiver; that from the condition of the pleadings in that cause the auditor of state will not and can not attempt to recover for the losses caused by the trustees, nor in any manner protect the depositors from such losses.   But that on the contrary the auditor of state maintains the former action, which is yet pending, for the purpose of enabling the defendants, bank officers and trustees, to screen themselves and their several acts of omission and commission from investigation and scrutiny.

The prayer of the complaint in the cause now before us is, that the plaintiffs, on behalf of themselves and other depositors for whose benefit they sue, may be permitted to maintain this action, the same (so it is alleged) not being intended in any way to interfere with any of the matters or proceedings involved, or which could be presented, heard or adjudicated upon, in the action theretofore begun by the auditor of state, and that the plaintiffs may have judgment for an accounting and may recover against the trustees the sum of two hundred and sixty thousand dollars, to be distributed among all depositors according to their rights, and that a receiver be appointed by the court.

The trustees and officers demurred to the complaint.   The demurrer was sustained at special term, and on appeal to the general term this ruling was affirmed.

The decision of two questions presented by the record and argument is all that is necessary to determine whether the rulings of the Superior Court were correct.   These questions are aptly stated as follows:

1. Can any person other than the auditor of state, under any circumstances, maintain an action against officers and trustees of savings banks for a violation of their statutory duties?

2. If, under any circumstances, the plaintiffs might maintain the present action, can they maintain it, when, as the record shows, the auditor of state has now pending an action against the trustees of the bank in another court, and when such other court has a receiver in charge of the assets of the bank?

An examination of the statute under which savings banks may be organized, gives rise to the suggestion at once that it was the purpose of the Legislature to embrace in its provisions a complete and adequate scheme for the organization, regulation and winding up of all institutions which might come into existence under it. Accordingly the qualifications and duties of trustees are prescribed with much minuteness, and the general course and conduct of the business is marked out with particularity and in unusual detail.

From the beginning of their existence until they are closed and their assets distributed, they are subject in many respects to the control and scrutiny of an officer of the State. Finally, it is provided in section 2757, R. S. 1881, substantially, that, whenever a savings bank fails for thirty days to pay depositors, as required by law, or whenever it shall appear to the auditor of state that the trustees or officers of a bank are mismanaging its affairs, and the same is insolvent, or in imminent danger of insolvency, the auditor shall forthwith file a complaint against such savings bank, and the trustees and officers thereof, asking for the dissolution of the corporation and the winding up of its affairs. " If it shall be established, upon the trial of the cause, that any trustee or other officer has been guilty of any wilful or fraudulent misconduct, whereby the assets of the corporation have been wasted or lost, the court shall render judgment against him to make good all such losses as his misconduct has occasioned; and

such recovery shall be for the benefit of the depositors and other creditors of such savings bank; and the court, in such proceedings, may render several judgments against the several trustees or officers who have been guilty of such misconduct."

It thus appears that the Legislature, in providing for the organization of savings banks, clearly evinced its purpose to put them and their officers and trustees under the supervision and control of the State. This it was entirely competent for it to do. By this statute it became the duty of the auditor of state, whenever it was made to appear to his satisfaction that the officers of the bank were mismanaging its affairs, or that it had become or was in danger of becoming insolvent, to institute suit to wind it up, and to enforce against its officers any liability which they may have incurred by reason of any wilful or fraudulent misconduct. The duty of the auditor, and the liability of the officers, and the manner of enforcing such liability, are clearly and explicitly defined.

The officers of savings banks, like officers of other corporations, are only liable to the creditors of the artificial body in the manner and to the extent prescribed by law. The general rule is, unless officers are made liable by statute for neglect of duty and mismanagement in office, creditors must look to the corporation for redress in respect of obligations contracted with it.

Under the statute already referred to, the circumstances under which the officers and trustees are to be held personally accountable, and the manner of enforcing their liability, are prescribed. The Legislature having provided a complete remedy through an officer of the State, who has been given a general supervision over the affairs of savings banks, no reason is apparent why the rule should not apply, that the remedy thus provided is exclusive of all others. It was competent for the Legislature, in providing for the organization of savings banks, to prescribe what remedies should be had

against them, as well as against those who by law were to be entrusted with the management of their business. *Smith* v. *Manufacturers' Nat'l Bank,* 9 Nat'l Bank. Reg. 122. Accordingly, it was held in the case above cited, that inasmuch as the act providing for the organization of national banks provided also how and by whom their affairs should be wound up, the method so prescribed was exclusive, and that a petition by a creditor to have such bank adjudged a bankrupt would not be entertained.

The case of *VonGlahn* v. *DeRosset,* 81 N. C. 467, is analogous in principle. The provision of the revised code of that State, chapter 26, sections 5 and 6, which continues the existence of defunct corporations for three years after the expiration of their charters, for the purpose of bringing and defending suits and closing their general business, ousts the former equity jurisdiction for the appointment of a receiver, at the instance of creditors, to wind up their corporate affairs. It was held in the case above cited, that the statutory remedy was exclusive of all others, and that a creditor could not maintain an action in his own behalf and in behalf of others. See, also, *Crisp* v. *Bunbury,* 8 Bing. 394.

This last case was an action for money had and received, brought by a depositor against the defendants as trustees of a savings bank. The court there said: " It appears, therefore, to us, that the only law which governed and regulated the rights of the parties to this action at the time the action was brought, is to be derived from the only statute then in existence in relation to the subject-matter of the action." *Chapman* v. *Milvain,* 5 Welsby H. & G. 61 ; *Kennedy* v. *Gibson,* 8 Wall. 498.

The principle which controls is that which has already been stated in substance, viz., that where a new right is created, and a specific mode of relief provided, the remedy is confined to the mode prescribed. *Aldrich* v. *Hawkins,* 6 Blackf. 125 ; *Storms* v. *Stevens,* 104 Ind. 46 ; *Howard* v. *Ken-*

*tucky, etc., Mut. Ins. Co.,* 13 B. Mon. 282; *Jessup* v. *Carnegie,* 80 N. Y. 441 (36 Am. R. 643).

This principle is illustrated in a great variety of cases. Further elaboration or citation of authority can not be necessary.

We think it clear that the mode of winding up the affairs of savings banks, and enforcing the liability of their trustees and officers for wilful or fraudulent misconduct, is prescribed in section 2757, above referred to, and that mode excludes all others.

It results, therefore, that the auditor of state alone is authorized to maintain an action against officers and trustees of savings banks for a violation of their statutory duties. This rule demands unhesitating application in a case where, as in the complaint before us, it appears that a suit has been brought by the auditor and is now pending to wind up the affairs of the bank.

The suggestions of collusion between the auditor and the trustees and officers of the savings banks go for nothing. It can not be doubted that the court in which the proceeding instituted by that officer is pending, and whose receiver is now administering its assets, would find abundant facilities for investigating the conduct of the trustees and officers of the bank in such manner as to afford a complete vindication of the rights of all concerned. The proper officer of the State having brought the matter of winding up the affairs of the bank within the jurisdiction of the court, all those whose rights are involved must, through that officer and in that proceeding, find the means of enforcing the statutory liability against delinquent officers and trustees, if any are delinquent.

Whether the plaintiffs may intervene there, or whether the discretion lodged in the auditor of state may be controlled, we need not now determine. What we do decide is, that since the statute prescribes that the auditor shall enforce

Ryan *et al. v.* Ray *et al.*

against the officers and trustees of savings banks the liability which the plaintiffs are here seeking to enforce, if such liability exists, the auditor alone is entitled to enforce it. The plaintiffs can not by alleging that the auditor has not acted wisely in framing his complaint, or in prosecuting the action which he alone is authorized to prosecute, maintain an independent suit and thus defeat the purpose of the statute. To hold otherwise would expose the officers and trustees of the bank to numberless suits by the several depositors, and at the same time subject them to continued liability at the suit of the auditor.

The policy of the law seems to have been to put the management of savings banks under the protection of the auditor of state, as well as under his surveillance. It is made his duty to demand of them a strict compliance with the statute and to enforce against their officers a vigorous personal liability for misconduct, but, in doing so, it also protects them from answering upon the same account to every depositor who may have sustained real or imaginary injury. Were it otherwise, no one could afford on any account to take the management of a savings bank. The affirmance of the judgment results necessarily from what has been said.

We need not determine whether the suit was well brought by the plaintiffs on behalf of themselves and others, nor is it important that we examine the particular facts complained of with a view of determining the sufficiency of the complaint.

The judgment is affirmed, with costs.

ELLIOTT, J., did not participate in the decision of this case.

Filed Jan. 19, 1886.